MARKLEY et al. v. CHRISTEN et al.
(No. 6453.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 10, 1920. Rehearing Denied Dec. 22, 1920.)

I. Easements ⬅12(2) — Written proposition to create perpetual easement held sufficient.

A written proposition in the form of a letter was sufficient to create a perpetual easement in the land, where it was in fact a power of attorney to a third person to sell such an interest in the land, and there was in fact a conveyance made by such third person under the authority given by such letter.

2. Easements ⬅22—Knowledge as to pumping plant on land held notice of interest of third person in land.

Knowledge by attorneys acquiring an undivided interest in land for legal services of existence on the land of an expensive pumping plant and pipe line, and that third persons were exercising absolute control over the plant and all the rights of ownership, and using a road, was sufficient to put a prudent man on inquiry, and the inference arises that the attorneys obtained information as to the interest which such third person had in the land, such as a perpetual easement or license.

3. Husband and wife ⬅267(9)—Wife estopped to question sale of pumping plant on land as personal property.

Where a wife knew of the existence, on land which was the community property of herself and her husband, of an expensive pumping plant and pipe line, and that third persons were exercising control over the plant, and that her husband had recognized their rights, she could not claim that she had no notice of the claim of such persons under a sale to them by the husband of his interest therein, as being personal property, and not realty, as attached to the land.

4. Licenses ⬅44(3) — "Easement" and "license" distinguished.

An "easement" implies an interest in land, and a "license" does not.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Easement; License.]

5. Licenses ⬅58(4)—Perpetual license in land upheld on equitable bill.

Where plaintiff landowner engaged in an enterprise with owners of other lands to build a pumping plant on his land, and the plant was erected on the faith of his promise that it should be a permanency, and the parties operated as associates for a time, and the plaintiff, deciding to withdraw, sold his interest to his associates, expressing a willingness to make the license or easement perpetual in writing, equity will not allow the permission to use his premises to be revoked, even though it amounted to a mere license.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by A. C. Markley and others against L. J. Christen and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Victor Keller, Frost Woodhull, and Frank H. Booth, all of San Antonio, for appellants. Dodson & Smith, of Laredo, and Floyd McGown, of San Antonio, for appellees.

FLY, C. J. This is an action of trespass to try title to 116 acres of land, in Webb county, known as the "Markley farm," instituted by appellants, A. C. Markley, Rebecca C. Markley, Victor Keller, and Frank H.

Booth, against appellees, L. J. Christen, J. S. Westbrook, Charles Lang, John H. Davis, Floyd McGown, A. J. Notzen, and the San Antonio Loan & Trust Company. The controversy resolved itself into a contest for a certain pumping plant, buildings, engine, boilers, and pump, and a 12-inch pipe line extending from the Rio Grande river along the north line of the boundary of Laredo, a distance of about 700 varas; the claim of appellants being that the improvements and structures were attached to and a part of the land owned by them, while appellees claimed an interest in the improvements and an easement in the land by virtue of a contract between A. C. Markley and Davis, whereby three-fourths of an acre, more or less, was conveyed to Davis, Markley, Westbrook, and Christen, and a right of way over the 116 acres of land was given. The cause was heard by the court without a jury, and judgment rendered for appellees, on their cross-action for the pumping plant and pipe line and for an easement in the land upon the annual payment of $100, for appellants for rents for 1919 and 1920, and that appellants recover nothing further and pay all costs expended on the suit.

Appellants abandon their first, second, third, fourth, seventh, eighth, ninth, eleventh, twelfth, thirteenth, and eighteenth assignments of error, on the ground that appellees construe the judgment to make them licensees for passage over the land, and that it does not grant them a perpetual easement in the land. Appellants also withdraw their contention that Markley had no right to grant the easement in the land, because it was a homestead.

We adopt certain pertinent portions of the conclusions of fact of the trial judge as our conclusions, as follows:

The plaintiffs, in undivided interests, owned the fee to the tract of land, containing about 129 acres, described in plaintiffs' amended petition, and the pumping plant and pipe line in controversy is situated on said land. On and prior to October 25, 1907, and up to and subsequent to June 27, 1912, said tract of land was the community property of the plaintiffs A. C. and Rebecca C. Markley.

About October 25, 1907, plaintiff A. C. Markley and the defendants L. J. Christen, John H. Davis, and J. S. Westbrook entered into a partnership agreement for the construction of the pumping plant and pipe line, to be maintained upon the property of the plaintiff A. C. Markley, to be jointly operated and used for the irrigation of lands owned by them respectively. At said time the only one of said partners whose land abutted on the Rio Grande river was that of plaintiff A. C. Markley, and all of said lands were of little value, if not placed under irrigation, but with irrigation all of said lands were given great value, and the Rio Grande river afforded an abundance of water for such irrigation.

It was to the mutual benefit and advantage of all said partners to jointly construct and operate said pumping plant and pipe line for the irrigation of their respective lands. Said pumping plant and pipe line cost approximately $10,000, which was contributed in equal proportion by the plaintiff A. C. Markley, the defendant L. J. Christen, and by John H. Davis and J. S. Westbrook, and was constructed in a substantial manner, consisting of steam boiler and pump securely affixed to concrete foundations and placed in a concrete pit for protection against overflow from the Rio Grande river, and approximately 2,000 feet of 12-inch iron pipe to convey the water across said lands, which pipe is buried in the ground from 4 to 20 feet.

There was nothing said between the parties, at the time of the construction of said pumping plant and pipe line, as to whether the same should become a fixture upon the land of the plaintiff A. C. Markley, or whether the same should remain personalty; but, at the time the same was constructed, a well-known local usage and custom prevailed that pumps and pipe lines so constructed remained the personal property of those constructing under such circumstances, and were not claimed as fixtures by the owner of the property abutting on the river, and this pumping plant and pipe line was constructed, in contemplation of all the parties, for the continuous use and benefit of all of the parties, and it was the intention of all of the parties that the pumping plant and pipe line should remain personal property and be maintained on the land of the plaintiff A. C. Markley.

There was ·an express agreement for an easement and the right to maintain said pumping plant and pipe line for a period of 5 years from October 25, 1907, with a right of renewal at the expiration thereof. Prior to said expiration, John H. Davis had sold his interest in the pumping plant and pipe line to the defendants L. J. Christen, Charles Lang, and J. S. Westbrook, and about June 27, 1912, the entire pumping plant and pipe line was jointly owned by plaintiff A. C. Markley and the defendants Christen, Lang, and J. S. Westbrook, and about said date the plaintiff A. C. Markley solicited Christen, Lang, and Westbrook to purchase his one-fourth interest in said pumping plant and pipe line as his personal property, and not as a fixture, and as an inducement proposed to them in writing, signed by him, that he would convey his interest in the pumping plant and pipe line, and would permit them to perpetually maintain the same upon his land as it then existed, for a rental of $100 per annum, upon payment to him in cash of the amount which he had contributed to its construction.

Christen, Lang, and Westbrook, in reliance upon his treating his interest in the pumping plant and pipe line as personal property, and his written proposition to permit the same to be perpetually maintained upon the land, accepted said proposition and paid to Markley $2,250 in cash for his one-fourth interest, which he conveyed to them by a written bill of sale, in which he warranted his title to his one-fourth interest as personal property, and which bills of sale were duly recorded in the bill of sale records of Webb county, Tex. No other writing making any reference to the

respective rights of the parties with reference to the maintenance of said pumping plant and pipe line upon said land as it then existed was ever executed, other than that contained in the proposition of and signed by the plaintiff A. C. Markley, made about June 27, 1912, and which was the inducement for the purchase of his one-fourth interest in the pumping plant and pipe line.

Subsequent to June 27, 1912, the defendants acquired the interest of J. S. Westbrook in the pumping plant and pipe line, and the same is now owned jointly by the defendants Christen, Lang, and McGown in the respective proportions of ownership, 51, 30 and 19 per cent. The pumping plant and pipe line is now worth more than $10,000. The maintenance of the pumping plant and pipe line upon the land of the plaintiff does not constitute any interference with their free enjoyment and use of their lands.

Subsequent to the sale of the plaintiff Markley's interest in the pumping plant and pipe line, and unsolicited by any of the owners therein and purchasers thereof from him, about March 15, 1913, he addressed a communication to the defendant Christen, in which he stated that he would extend the lease on the pump site for 5 years. About 1915 the plaintiff A. C. Markley made a deed to said land to John H. Davis, whose properties were subsequently placed in the hands of a receiver, among which was the land now owned by the plaintiffs.

No one of the plaintiffs ever asserted any claim of ownership to the pumping plant and pipe line subsequent to the sale of the interest by A. C. Markley until the institution of this suit, and the plaintiff A. C. Markley still retains the money paid to him for his one-fourth interest and taxes refunded.

We also find that Keller and Booth acquired an undivided interest in the land from the Markleys for legal services, and that they were charged with notice as to the rights of appellees. All the appellees claim their interests from John H. Davis.

[1] The fifth assignment of error assails a conclusion of law made by the trial judge to the effect that a written proposition made by A. C. Markley was sufficient to create a perpetual easement in the land to Christen and associates. The paper is called a letter, but it was a power of attorney from A. C. Markley to John H. Davis to sell to L. J. Christen his interest in the pumping plant for $2,250, and to give Westbrook and Christen a perpetual lease on right of way for machine for $100 annually, and that the pipe line should be kept in repair, so as not to damage the property. Under that authority Davis sold the Markley interest to Christen and Westbrook. The authority was given by Markley, and was executed fully by Davis, and the money received by Markley. The case of Vanter v. Greenwood (Tex. Civ. App.) 212 S. W. 269, cited by appellants, is not in point in this case. It would be if there had been no conveyance made by Davis under the authority given by Markley. In the cited case a letter was written to Sargent by Vanter and wife, authorizing Sargent to make a contract of sale of land; but he did not act under it, and the court held that the contract could not be construed to convey title to the land. The fifth and sixth assignments of error are overruled.

The tenth assignment of error, being on the question of homestead, has been formally waived by appellants.

The court concluded that there was no positive agreement as to whether the pumping plant and pipe line should become a fixture on the land or remain personal property, but also found that it was a well-known usage and custom that such plants remained personal property, and he concluded it was so intended in this instance. The evidence fully justifies such conclusion, and we overrule the fourteenth assignment of error, which attacks the conclusion on the ground that it is not sustained by the evidence.

The evidence clearly indicates that Markley made no objection to appellees possessing and using the plant, and for years accepted rent for it. There was no error in the legal conclusion of the trial judge that the stipulation in the proposition of Markley, made on June 27, 1912, that the plant should be removed, had been waived. The fifteenth assignment of error is overruled.

[2, 3] The sixteenth and seventeenth assignments of error are overruled. The evidence clearly indicates that Keller, Booth, and Mrs. Markley were charged with notice as to the rights of appellees in the pumping plant and pipe line. They knew that appellees were exercising absolute control over the plant, and exercising all the rights of ownership over it, and using the road, and the least diligence would have shown that they owned the property and an easement in the land. The 5-year lease of the land made by Markley to Davis expired on October 25, 1912, and on March 5, 1913, it was renewed for another 5 years. In the meantime, on June 27, 1912, Markley had sold his one-fourth interest in the pumping plant to Christen, and Markley, as he swore, recognized the agreement with Davis, Christen, and Westbrook as being one giving perpetual use to them of the plant. Keller, Booth, and Mrs. Markley knew that appellees had expended large sums of money on the pumping plant, and that it was absolutely essential for the proper cultivation of their land, and knew that A. C. Markley had recognized their right to hold and enjoy. Pomeroy, Eq. Jur. §§ 600, 730.

The sight or knowledge of structures, or other visible material objects, such as roads, wires, or poles connected with or on the land, might reasonably suggest some easement, license, or other similar right. Whenever it appears that a party obtains knowledge and

information that are sufficient to put a prudent man upon inquiry, then the inference will arise that he obtained such information. The valuable pumping plant and pipe line, the road used for egress and ingress to the property, the knowledge that the plant was indispensable to the lands irrigated by it, and the possession of appellees proclaimed that appellees held a valuable interest in the structures and highway, and attorneys for the Markleys and Mrs. Markley cannot claim that they had no notice of the claim of appellees. Had the language of a perpetual lease and grant of a perpetual license been recorded in the most decided way in the record of conveyances, it could not have conveyed clearer notice than did the visible objects on the land. Railway v. Russell, 83 Conn. 581, 78 Atl. 324.

[4, 5] While the facts might not create an easement, which implies an interest in land, and a license does not, still appellees have rights created by parol which would justify the judgment. That a license, under the facts of this case, was created, if not an easement, is clear and indisputable. The evidence of A. C. Markley is plain on that subject, as hereinbefore indicated. Markley stated that it was understood that the rights acquired in the pumping plant and road should be permanent. Further, by the lease made in this case, something more than a mere temporary lease was evidently intended, when it is construed in the light of all the circumstances. It was evidently the purpose of the parties to the contract to create something permanent and enduring, and the right to revoke the contract of agreement is entirely inconsistent with the evident purpose of erecting improvements of the value of at least $10,000 and the desire to obtain permanent water for irrigating land. The very nature of the enterprise indicated its permanent character, and the supposition for thought could not be indulged that men would invest in such solid and permanent improvements merely for a few years' irrigation. None of them so construed the contract. Even if the contract amounted to a mere license, which is not held by this court, where there has been such expenditure of money on the improvements, and to acquire the interest of A. C. Markley, as was made by appellees, it would be such injustice to permit a revocation by the licensor as could meet with no support or favor in a court of equity consecrated to enforcing action sustained by morality and good conscience. R. C. L. §§ 89, 90, pp. 576–580.

The license to erect the improvements was executed, and it is held that to permit a revocation after an execution would be to permit a palpable fraud, and this is intensified where the licensor, not only grants the right to the licensee to go on the land, but joins in the enterprise and accepts the benefits of the licensee's labor and expense. As said in Appeal of Clelland, 133 Pa. 189, 19 Atl. 352, 7 L. R. A. 752:

"A right of this character, while not strictly an easement, is in the nature of one. It is really a permission or license, express or implied, to use the property of another in a particular manner, or for a particular purpose. Where this permission has led the party to whom it has been given to treat his own property in a way in which he would not otherwise have treated it, as by the erection or construction of permanent improvements thereon, it cannot be recalled to his detriment. Having expended his money upon the faith of it, and not being able to be restored to his original position, equity will not allow the permission to be revoked, in breach of such faith. This has given rise to the doctrine of executed or irrevocable licenses."

In the case of Nowlin v. Whipple, 120 Ind. 596, 22 N. E. 669, 6 L. R. A. 159, it was held:

"While it is well established that a mere naked license to use the land of another is revocable at the pleasure of the licensor, yet where a consideration has been paid, or value parted with, on the faith that the license shall be perpetual, it cannot be revoked to the injury of the licensee."

In this case Markley engaged in an enterprise with part of the appellees to build a pumping plant on his land, he entered into an agreement with them, the plant was erected on the faith of his promise that the pumping plant should be a permanency, the parties operated the plant as associates for a time, and then Markley, desiring to withdraw, sold his interest to his associates, expressing a willingness to make the license or easement perpetual in writing. But "a change has come over the spirit of his dreams," and he is joining himself with others to defeat an agreement which in good faith, good conscience, and equity he ought to uphold, and which a court of equity will insist that he shall uphold.

All of the assignments of error are overruled, and the judgment is affirmed.